Alise Johnson, Esq.
Email: johnsonali@sec.gov
Attorney for Plaintiff
Securities and Exchange Commission
801 Brickell Avenue, Suite 1950
Miami, FL 33131
Telephone: (305) 982-6300
Florida Bar No. 0003270

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>JOHN MARQUES AND LIFELINE INNOVATIONS & INSURANCE SOLUTIONS LLC,<br><br>Defendants. | Case No.: [Case No.]<br><br>**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF AND DEMAND FOR JURY TRIAL** |

Plaintiff Securities and Exchange Commission ("Commission") alleges:

**INTRODUCTION**

1. From approximately August 2016 through February 2020, Defendants John Marques ("Marques") and his company Lifeline Innovations & Insurance Solutions LLC ("Lifeline") acted as unregistered brokers on behalf of several real estate investment funds ("EquiAlt Funds") managed by EquiAlt, LLC ("EquiAlt"). They raised approximately $7.9 million from the unregistered offer and sale of securities of two of the EquiAlt Funds to more than 50 retail investors located in California and Washington. From these sales, the Defendants received approximately $824,000 in transaction-based sales commissions.

COMPLAINT  1

2.  At all relevant times, the Defendants were not registered as broker-dealers with the Commission or associated with a registered broker-dealer. EquiAlt Funds' securities offerings were not registered with the Commission and there was no applicable exemption from registration for these offerings.

3.  By engaging in this conduct, the Defendants each violated Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a) and 77e(c)], and Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78o(a)(1)]. Unless enjoined, the Defendants are reasonably likely to continue to violate the federal securities laws. The Commission also seeks against all Defendants disgorgement of ill-gotten gains along with prejudgment interest thereon, and civil money penalties.

## DEFENDANTS

4.  **John Marques.** During the relevant period, Marques owned, operated, and controlled Lifeline and was a resident of Dublin, California. Marques is not currently registered with the Commission or the Financial Industry Regulatory Authority ("FINRA"), nor was he during the time period relevant to the allegations contained herein. He was also not associated with a broker-dealer registered with the Commission.

5.  **Lifeline Innovations & Insurance Solutions LLC** is a Wyoming limited liability company whose primary place of business was located in Pleasanton, California. During the relevant period, Marques owned, operated, and controlled Lifeline, and treated it as his alter ego. Lifeline has never been registered with the Commission, FINRA or any state securities regulatory authority.

## JURISDICTION

6.  This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d) and 77v(a)]; and Sections 21(d), 21(e) and 27(a) of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa(a)].

7. This Court has personal jurisdiction over the Defendants and venue is proper in the Northern District of California because Defendants transacted business in this District relating to the sale of the EquiAlt Funds. In addition, Marques resides in this District.

8. In connection with the conduct alleged in this Complaint, the Defendants, directly and indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation or communication in interstate commerce, and of the mails.

## FACTUAL ALLEGATIONS

9. From at least 2016 through February 11, 2020 (when the Commission filed an emergency action against EquiAlt and others), EquiAlt conducted a fraudulent offering of securities issued by the EquiAlt Funds. The fraud involved at least 1,100 investors who invested approximately $170 million in the EquiAlt Funds.

**A.  The EquiAlt Fraud**

10. At all relevant times, Brian Davison controlled EquiAlt, whose primary business purpose was the management of the EquiAlt Funds. Davison, along with EquiAlt's Vice President Barry Rybicki, told investors that the EquiAlt Funds would use their money to purchase real estate in distressed markets throughout the United States and that these real estate investments would generate revenues sufficient to pay investors interest rates of 8% to 10% per annum on their investments. The EquiAlt Funds, however, were unprofitable almost from inception.

11. Without sufficient revenues to pay the money owed to investors, EquiAlt soon resorted to fraud, using new investor money to pay the interest promised to existing investors. EquiAlt perpetuated this fraud for several years until the Commission filed its emergency action in February 2020 and the Court entered a temporary restraining order, an asset freeze, and appointed a receiver over EquiAlt and the EquiAlt Funds.

12. In furtherance of this fraudulent scheme, EquiAlt, Rybicki, and Davison also made numerous material misrepresentations and omissions to investors in connection with the offer and sale of investments in the EquiAlt Funds.

13. EquiAlt, through a network of unregistered sale agents including the Defendants in this action, sold investors 3-year or 4-year term debentures issued by the EquiAlt Funds providing a fixed annual return of 8% to 10%. Many of the investors were elderly, retired, and used their IRAs to invest in the EquiAlt Funds.

**B.  Defendants Offered and Sold EquiAlt Securities**

14. Over a period of several years, EquiAlt recruited a network of unregistered sales agents throughout the United States to sell the fixed rate debentures issued by the EquiAlt Funds. EquiAlt paid these unregistered sales agents, including the Defendants, commissions ranging from 6-12% of the amount invested in the EquiAlt Funds.

15. EquiAlt Funds' debentures are securities within the meaning of Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act which defines a "security" to include, among other things, "any note, . . . bond, [or] debenture."

16. EquiAlt Funds' debentures also fall under Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act as "investment contracts." Investors invested money in the debentures but had no control over how the EquiAlt Funds would use it. Investors had no role in selecting or analyzing the underlying properties and the expected profitability of the investments was derived solely from the efforts of EquiAlt, Davison, and Rybicki.

17. Marques first became involved with EquiAlt in 2016 when he and one of the EquiAlt Funds (EquiAlt Fund, LLC) entered into a written agreement titled "Finder's Fee Agreement" whereby Marques agreed to introduce investors to the fund in exchange for transaction-based compensation. The agreement, which had a two-year term, stated that Marques would be paid 6% of the total amount invested in the fund by an investor introduced by Marques. The agreement also provided that Marques would

COMPLAINT                                                4

receive a 2% bonus if the total amount invested in the fund in any particular month exceeded $500,000.

18. As alleged more particularly below, Marques' conduct relating to the EquiAlt Funds far surpassed that of a mere "finder." At all relevant times, Marques, acting through Lifeline, was a regular participant in numerous transactions involving EquiAlt Funds' securities at key points in the chain of distribution.

19. Shortly after entering into the so-called Finder's Fee Agreement, Marques began actively soliciting investors for the EquiAlt Funds by conducting dinner seminars with prospective investors he found after sending advertisements in the mail. During these dinner seminars, Marques made presentations about the EquiAlt investment as well as other investment opportunities such as oil and gas investments and life settlements. At the end of these dinner seminars, Marques asked prospective investors to complete a form indicating whether they had an interest in one or more of the investment opportunities presented to them so that he could schedule an individual meeting with them to discuss the specific details of the investment. If a prospective investor expressed an interest in the investment opportunity offered by the EquiAlt Funds, Marques would then provide the prospective investor with copies of EquiAlt Funds' offering documents and marketing/sales materials including sales brochures, subscription agreements, and private placement memoranda.

20. In addition to providing prospective investors with copies of EquiAlt Funds' offering documents and marketing/sales materials, Marques typically explained important aspects of the investment such as the management of the EquiAlt Funds and their underlying business model. Among other things, he explained to prospective investors that their investment funds would be used by the EquiAlt Funds to invest in real estate that would be purchased at low or distressed prices. He also represented that the risk of investing in the EquiAlt Funds was low because it would be difficult for management to abscond with real estate. Over a period of almost four years, Marques repeatedly recommended the EquiAlt Funds to more than fifty investors.

21. Marques also helped investors handle most aspects of the actual securities sales transactions. For example, he collected the completed subscription agreements from investors together with their investment checks and forwarded these documents directly to his contact at EquiAlt in order to complete the investment transaction. If necessary, he also assisted investors resolve any issues that arose after they made an investment in the EquiAlt Funds such as the payment of interest due to investors under the debentures. Marques also collected an additional commission from the EquiAlt Funds on those occasions when investors renewed their investments in the EquiAlt Funds after their original investments matured.

22. As a result of the conduct alleged above, Defendants regularly participated in multiple securities transactions involving the EquiAlt Funds at key points in the chain of distribution. More specifically, Marques repeatedly solicited investors for EquiAlt's Funds; communicated directly with investors about EquiAlt's Funds; described the merits of the EquiAlt Funds' securities to investors; reassured investors about the risk of investing in the EquiAlt Funds; and received transaction-based compensation. Ultimately, Defendants raised about $7.9 million from the unregistered offer and sale of securities of the EquiAlt Funds to more than 50 retail investors. From these sales, the Defendants received approximately $824,000 in transaction-based sales commissions.

23. Moreover, when the Defendants sold the EquiAlt Funds' securities they held no securities licenses, were not registered with the Commission as broker-dealers, and were not associated with a registered broker-dealer.

24. Finally, although the EquiAlt Funds purportedly offered their securities under Rule 506(b) of Regulation D, a "safe harbor" under Section 4(a)(2) of the Securities Act, the safe harbor did not apply because the EquiAlt Funds engaged in general solicitation or advertising to market their securities. Furthermore, the EquiAlt Funds did not provide an audited balance sheet or financial statements to the unaccredited investors. Consequently, the Defendants engaged in unregistered securities transactions for which an exemption from registration did not apply.

# CLAIMS FOR RELIEF

## COUNT I

### Violations of Sections 5(a) and 5(c) of the Securities Act

25. The Commission repeats and realleges paragraphs 1 through 24 of this Complaint as if fully set forth herein.

26. No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities offered and sold by the Defendants as described in this Complaint and no exemption from registration existed with respect to these securities.

27. From approximately August 2016 and continuing through approximately February 2020, the Defendants directly and indirectly:

    (a)    made use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise;

    (b)    carried or caused to be carried securities through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; or

    (c)    made use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security;

without a registration statement having been filed or being in effect with the Commission as to such securities.

28. By reason of the foregoing the Defendants violated and, unless enjoined, are reasonably likely to continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

# COUNT II

## Violations of Section 15(a)(1) of the Exchange Act

29. The Commission repeats and realleges Paragraphs 1 through 24 of this Complaint as if fully set forth herein.

30. From approximately August 2016 and continuing through approximately February 2020, the Defendants, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce effected transactions in, or induced or attempted to induce the purchase or sale of securities, while they were not registered with the Commission as a broker or dealer or when they were not associated with an entity registered with the Commission as a broker-dealer.

31. By reason of the foregoing, the Defendants, directly or indirectly, violated and, unless enjoined, are reasonably likely to continue to violate Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

# RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests the Court find the Defendants committed the violations alleged, and:

## A.

## Permanent Injunctive Relief

Issue a Permanent Injunction enjoining the Defendants from violating Sections 5(a) and 5(c) of the Securities Act and Section 15(a)(1) of the Exchange Act.

## B.

## Disgorgement and Prejudgment Interest

Issue an Order directing Defendants Marques and Lifeline to disgorge on a joint and several basis all ill-gotten gains or proceeds received as a result of the acts and/or courses of conduct complained of herein, with prejudgment interest thereon.

### C.
### Civil Money Penalties

Issue an Order directing the Defendants Marques and Lifeline to pay civil money penalties on a joint and several basis pursuant to Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act.

### D.
### Further Relief

Funding such other and further relief as may be necessary and appropriate.

### E.
### Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

### DEMAND FOR JURY TRIAL

The Commission hereby demands a trial by jury in this case.

Dated:  December 20, 2021

Respectfully submitted,

s/ Alise Johnson
Alise Johnson
Attorney for Plaintiff
Securities and Exchange Commission
Email:  johnsonali@sec.gov
801 Brickell Avenue, Suite 1950
Miami, FL 33131
Telephone: (305) 982-6300
Florida Bar No. 0003270

COMPLAINT                                                          9